UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
DISH NETWORK L.L.C.,                                            :
                                                                :   Civil Action No. 21-cv-6730
                    Plaintiff,                                  :
                                                                :   **COMPLAINT**
        - against -                                             :
                                                                :
DOES 1-10,                                                      :
                                                                :
                    Defendants.                                 :
---------------------------------------------------------------- x

      Plaintiff DISH Network L.L.C. ("DISH"), by and through its undersigned attorneys, for its Complaint against Does 1-10 (collectively the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

    1.    This copyright infringement action arises out of a global pirate television service that is branded to customers in the Southern District of New York, and throughout the United States, as My Indian TV (the "My Indian TV Service").

    2.    Defendants knowingly and unlawfully transmit into the United States television channels originating from India and Pakistan that are or were exclusively licensed to DISH in the United States. Starting in November 2018, DISH investigators observed Defendants repeatedly infringing DISH's exclusive rights by continuously streaming the My Indian TV Service – including channels exclusively licensed to DISH – into the United States.

    3.    Defendants transmit the My Indian TV Service without authorization to their customers in the United States (the "Service Users"). Service Users can access the My Indian TV Service through a variety of means including through web browsers, digital TV "set-top boxes" and apps available on the Android and iOS platforms.

    4.    Defendants promote the My Indian TV Service on an array of platforms, including the websites new.MyIndian.Tv, and MyIndian.Tv, as well as on YouTube and Twitter.

5. Defendants have demonstrated the willfulness of their copyright infringement by continuing to transmit channels that have been exclusively licensed to DISH, despite receiving numerous demands to cease and desist.

## THE PARTIES

6. Plaintiff DISH is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

7. Defendants DOES 1-10 (collectively, "Defendants") are individuals or entities doing business as My Indian TV. Defendants take elaborate steps to conceal their identities, and consequently, DISH does not currently know the names of Defendants. Defendants transmit television channels that are or were exclusively licensed to DISH. Defendants distribute, sell and promote the My Indian TV Service in the Southern District of New York and throughout the United States. The My Indian TV Service delivers its content, without authorization, to Service Users in the United States from computer servers scattered across the globe, including in the United States, Canada, Australia, the United Kingdom, Germany, the Netherlands, and Latvia.

## JURISDICTION AND VENUE

8. DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

9. Personal jurisdiction over Defendants is proper because they have each purposefully directed their conduct towards, and have purposefully availed themselves of the privileges of conducting business activities within the State of New York by, among other things, transmitting, selling and supplying, and offering to transmit, sell and supply, the My Indian TV Service to Service Users in the Southern District of New York, causing injury to DISH in this

State and in this District.  Alternatively, to the extent any Defendant is not subject to personal jurisdiction in any state's court of general jurisdiction, personal jurisdiction is proper because each Defendant derives substantial revenue from residents of the United States as a whole, and they are therefore each subject to personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2).

10. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to DISH's claims occurred in this judicial district and under 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this judicial district.  Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## FACTUAL BACKGROUND

### A. DISH's Copyrights

11. DISH is the fourth largest pay-television provider in the United States, providing copyrighted programming to millions of subscribers nationwide.  DISH is one of the largest providers of international television channels in the United States, and offers hundreds of channels in a large number of different languages.

12. DISH has contracted for and purchased rights for the international channels distributed on its platforms from channel owners and their agents, including:  ARY Digital USA LLC; MSM Asia Limited; HUM Network Ltd.; Television Media Network (Pvt.) Ltd.; Geo USA Holdings, Inc. d/b/a Geo USA LLC; and National Communications Services (SMC-Pvt) Ltd. (collectively, the "Networks").

13. The Networks' channels that DISH distributes and performs in the United States include:  ARY Digital; Dunya TV; Express News; Geo News; Hum Masala TV; Hum TV; Hum Sitaray; Hum World; Sony Pal; SAB; and SET (the "Protected Channels").  The Networks

acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

14. DISH entered into signed, written licensing agreements with each of the Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and the copyrighted programs that air on the Protected Channels in the United States by means including satellite, over-the-top ("OTT"), Internet Protocol television ("IPTV"), and the internet. Many of the program episodes that aired on the Protected Channels and for which DISH holds or held exclusive distribution and public performance rights are registered with the United States Copyright Office (the "Registered Works"). *See* **Exhibit 1** (list of 177 Registered Works). There are also a vast number of programs that aired on the Protected Channels, whose episodes are each copyrighted works to which DISH holds or held exclusive distribution and public performance rights and for which not all episodes have been registered with the United States Copyright Office. *See* **Exhibit 2**.[1]

15. Defendants have not been and currently are not authorized by DISH to transmit, distribute, or publicly perform the Protected Channels or copyrighted programs that air on those channels in the United States, and Defendants have paid no compensation to DISH in connection with their unlicensed transmission, distribution and public performance in the United States of the Protected Channels or the copyrighted programs that air on those channels.

---

[1] Since the programs that make up the Protected Channels are non-United States works, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works. 17 U.S.C. §§ 101 and 411. *See infra* ¶ 38.

**B.     Defendants' Use of Websites and Social Media to Promote Access to Infringing Content**

16.     Defendants market the My Indian TV Service in the United States on at least two different websites that they control: new.MyIndian.Tv, and www.MyIndian.Tv (collectively, the "Websites"). The Websites have different designs, but their content is materially the same. The Websites promote the My Indian TV Service as "The perfect source for Indian TV abroad."

17.     For example, and as shown below, the Websites state that the My Indian TV Service offers "200+Live Channels," available to consumers at a starting price of $14.95. The MyIndian.Tv site also states that it offers consumers "100+HD Channels."





18. The My Indian TV Service is targeted at audiences in North America and indeed the Websites state that the My Indian TV Service does "not provide any kind of service or support in India."

19. The new.myindian.tv website includes status bars in the lower right corner of the home page, giving consumers real-time updates on the availability of the My Indian TV Service, including the percentage of servers available to transmit unauthorized content, the network capacity, and the number of channels available:



20. Defendants also operate a YouTube channel where they post videos instructing customers on how to use the My Indian TV Service to access unauthorized content from the Protected Channels (and thus infringe DISH's copyrights). *See* https://www.youtube.com/channel/UCvitHx8amdBy6VDmdEG58fg. *See also infra* ¶ 23.

6

21. Defendants also promote the My Indian TV Service via Twitter using the handle, @MyIndiantv1.

C. **Defendants Provide Multiple Ways for Service Users to Access Infringing Content**

22. The Websites state that customers can access the copyrighted programs that make up the Protected Channels in multiple ways, using various devices. For example, the MyIndian.Tv website states that customers can "[w]atch Indian TV Channels Live anywhere through an internet connection." Service Users can in fact log on to the Websites and access the My Indian TV Service from any web browser connected to the internet.

23. Defendants also actively help Service Users access the My Indian TV Service through a variety of other technological means. For example, Defendants facilitate access to the My Indian TV Service by encouraging Service Users to use a third party IPTV "set-top box" called MAG 250/254, which is sold and manufactured by a Ukrainian company called Infomir (www.infomir.eu). The MyIndian.Tv website states:

> All myindian.tv services are available on MAG set top boxes. Once you get a subscription you can use it for both web and set top box access to live TV and radio.
>
> If you already got the box, you can use it with our service without any extra charges and fees (You still need to have a myindian.tv subscription).
>
> If you do not have the box yet, you can get it directly from the manufacturer, distributors in your region, or from any other shop or website.

Defendants also created and posted a video on their YouTube channel that instructs Service Users how to access the My Indian TV Service using a Mag set top box: https://www.youtube.com/watch?v=47bpfv_o7mI&t=2s.

24. Once a Service User accesses the My Indian TV Service using a Mag set top box, the Service User can watch DISH's licensed content from the Protected Channels (without

7

DISH's authorization) and can select channels, or categories of content from different screens, as illustrated below:





25. Yet another way that Service Users can access infringing content from the Protected Channels through the My Indian TV Service is on Android or iOS devices using a free, third-party application called the Matrix TV Browser, which can be downloaded from links provided on the Websites.

26. Service Users can also access the My Indian TV Service by installing a My Indian TV plug-in that works with an open-source software platform called Kodi. The My Indian TV Kodi plug-in can be downloaded from the Websites, *see* http://www.myindian.tv/?c=2&a=0&p=52, and Defendants also posted a video on their YouTube channel that walks customers through the process: https://www.youtube.com/watch?v=yPqPo6EjCUI.

**D.      Defendants' Knowledge of Infringing Activity**

27. Defendants have actual knowledge that their transmission of the Protected Channels in the United States on the My Indian TV Service infringes DISH's copyrights. Between November 2018 and the filing of the Complaint, DISH sent at least 21 separate cease and desist notices to the email address used by Defendants (iptvsolutions@gmx.com), and more than 40 additional cease and desist notices to vendors used by Defendants to distribute and publicly perform the My Indian TV Service, including hosting providers and IPTV Solutions, Ltd, the entity that receives payments on behalf of Defendants. Defendants failed to respond to any of these cease and desist notices.

28. In some instances, the hosting providers who received these cease and desist notices removed the infringing content, but Defendants intentionally interfered with the takedown efforts by, for example, transmitting the Protected Channels from different hosting providers.

**E.     DISH's Monitoring of Defendants' Infringing Activity in the United States**

29.     Starting in November 2018, DISH investigators have observed Defendants repeatedly infringing DISH's exclusive rights by continuously streaming the My Indian TV Service – including the Protected Channels exclusively licensed to DISH – into the United States. On at least three separate occasions, beginning in late 2018, DISH investigators in the United States purchased subscriptions to the My Indian TV Service from the website www.myindian.tv, and in each instance, the investigator received an invoice through PayPal to send payment to IPTV Solutions Ltd. at the email address, iptvsolutions@gmx.com.

30.     For example, in early 2021, a DISH investigator attempted to purchase an "Indian Ultimate" subscription from the website, www.myindian.tv. This attempt was unsuccessful; each time the investigator tried to pay online, he received an error. DISH's investigator subsequently conducted a "live chat" with customer support on the www.myindian.tv website, and the service representative told DISH's investigator to expect an emailed invoice through PayPal, which would prompt him to pay $49.95 to IPTV Solutions, Ltd. at the email address, iptvsolutions@gmx.com. The email arrived shortly thereafter and the DISH investigator executed the payment as instructed by the service representative.

31.     After the DISH investigator provided a transaction ID to the My Indian TV customer service representative, the service was activated and the DISH investigator was able to access unlicensed television programs from the Protected Channels through the My Indian TV Service.

32.     DISH investigators subsequently purchased additional subscriptions for the My Indian TV Service and were directed to make payments to IPTV Solutions, Ltd. in a manner similar to that described above.

33. On at least 24 occasions, DISH investigators have used credentials purchased on the Websites to view unlicensed television programs from the Protected Channels transmitted by the My Indian TV Service to computers in the United States. For example, in the Spring of 2021, DISH investigators used two different sets of My Indian TV Service credentials purchased on the Websites to access unlicensed content from the Protected Channels that was transmitted to computers using IP addresses registered to addresses within the Southern District of New York.

34. DISH investigators have observed each of the Protected Channels being streamed by Defendants on multiple occasions. For example:

   a. Dunya TV was observed on the My Indian TV Service in November 2018, and numerous times thereafter up through and including May 2021.
   b. Express News was observed on the My Indian TV Service in November 2018, and numerous times thereafter up through and including November 2020.
   c. GEO News was observed on the My Indian TV Service in November 2018, and numerous times thereafter up through and including April 2021.
   d. Hum Masala TV was observed on the My Indian TV Service in February 2019, and numerous times thereafter up through and including November 2020.
   e. Hum Sitaray was observed on the My Indian TV Service in January 2019, and numerous times thereafter up through and including November 2020.
   f. Hum TV was observed on the My Indian TV Service in November 2018, and numerous times thereafter up through and including May 2021.
   g. Hum World was observed on the My Indian TV Service in January 2019, and numerous times thereafter up through and including November 2020.
   h. Sony Pal was observed on the My Indian TV Service in August 2019, and numerous times thereafter up through and including November 2020.

      i. SAB was observed on the My Indian TV Service in January 2019, and numerous times thereafter up through and including May 2021.

      j. SET was observed on the My Indian TV Service in November 2018, and numerous times thereafter up through and including May 2021.

35. Based on DISH's investigation, it is clear that Defendants have committed and continue to commit a massive infringement of DISH's exclusive rights in the copyrighted programs that make up the Protected Channels by continuously transmitting, publicly performing and distributing the Protected Channels in the United States. Defendants' continuous and unauthorized distribution and public performance of the Protected Channels constitutes an infringement not only of DISH's rights in the Registered Works listed in Exhibit 1, but also an infringement of DISH's exclusive rights with respect to each and every episode of the copyrighted programs that make up the Protected Channels, including but not limited to each and every episode of the programs listed in Exhibit 2.

## FIRST CAUSE OF ACTION
## DIRECT COPYRIGHT INFRINGEMENT\

36. DISH repeats and realleges the allegations in paragraphs 1-35.

37. DISH is a copyright owner under 17 U.S.C. § 106 because DISH holds, or held during the relevant time period, the exclusive rights to distribute and publicly perform in the United States, by means including satellite, OTT, IPTV, and the internet, the programs that make up the Protected Channels.

38. The programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. DISH's copyrights in programs that aired on the Protected Channels arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including

Pakistan and India, where the programs were authored and first published. Under 17 U.S.C. §§ 101 and 411, the programs that make up the Protected Channels are non-United States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works. Nonetheless, as shown on Exhibit 1, several episodes from programs that appear on the Protected Channels have been registered with the United States Copyright Office.

39. Defendants infringe DISH's exclusive rights in the copyrighted programs that make up the Protected Channels by selling the My Indian TV Service to Service Users in the United States.

40. By transmitting the copyrighted programs through the My Indian TV Service to Service Users in the United States, Defendants publicly perform and distribute the Protected Channels and the copyrighted programs that make up the Protected Channels without authorization from DISH.

41. In furtherance of their infringing activities, Defendants advertise the My Indian TV Service in the United States as a means of accessing the Protected Channels and the copyrighted programs that make up the Protected Channels. Defendants intend that the My Indian TV Service be used by Service Users in the United States to access the Protected Channels and the copyrighted programs that make up the Protected Channels, and they promote, encourage, and facilitate use of the Websites, Mag 250/254 Boxes, the Matrix TV Browser app, and Kodi software to access the Protected Channels through the My Indian TV Service.

42. Defendants have and had actual knowledge that their transmission in the United States of the Protected Channels and the copyrighted programs that make up the Protected Channels infringe DISH's exclusive distribution and public performance rights.

43. The infringement of DISH's rights in each copyrighted program constitutes a separate and distinct act of copyright infringement.

44. Defendants are jointly and severally liable for each act of infringement described above because they personally directed, authorized, supervised, or participated in, and financially benefited from such infringing conduct as alleged herein.

45. Defendants' actions were willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH.

46. Unless enjoined by the Court, Defendants will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## SECOND CAUSE OF ACTION
## SECONDARY LIABILITY FOR COPYRIGHT INFRINGEMENT

47. DISH repeats and realleges the allegations in paragraphs 1-46.

48. As set forth above, DISH's exclusive rights to distribute and publicly perform the Protected Channels and copyrighted programs that make up the Protected Channels in the United States are directly infringed by the unauthorized transmission of these programs by certain of the Defendants and other currently unknown third parties to Service Users in the United States.

49. This direct infringement by certain of the Doe Defendants and other currently unknown third parties is knowingly facilitated and enabled by other Doe Defendants (the "Secondary Infringers"), who encourage and materially contribute to the direct infringement of DISH's exclusive distribution and public performance rights by, among other things, facilitating access by Service Users in the United States to the Protected Channels and the copyrighted programs that make up the Protected Channels, despite the Secondary Infringers' ability to prevent such access. The Secondary Infringers also induce the infringement of DISH's exclusive

14

distribution and public performance rights by, among other things, creating the audience for that infringement in the United States.

50. The Secondary Infringers have the right and ability to supervise the infringing activity set forth above, as well as an obvious and direct financial interest in exploitation of the Protected Channels and the copyrighted content that airs on the Protected Channels. Despite actual knowledge that the transmission of the Protected Channels and the copyrighted programs that make up the Protected Channels to Service Users in the United States infringes DISH's exclusive distribution and public performance rights, the Secondary Infringers have declined to exercise their right and ability to stop this infringing activity.

51. The Secondary Infringers could have taken simple measures to prevent infringement of DISH's copyrights when they received notices of infringement from DISH, such as ensuring that their software and service were not used to access the Protected Channels. The Secondary Infringers could have also blocked the My Indian TV Service from accessing servers and URLs that were identified to be streaming the Protected Channels or the copyrighted content that airs on the Protected Channels. The Secondary Infringers could have also easily refrained from providing instructions to their customers on how to install and activate software files and apps that provided Service Users with access to the Protected Channels.

52. The Secondary Infringers' actions are willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH.

53. Unless enjoined by the Court, the Secondary Infringers will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Court grant judgement in favor of Plaintiff and against Defendants as follows:

a) Permanently enjoining Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them, from (i) reproducing, distributing, publicly performing, and/or in any way transmitting television programming in which DISH holds exclusive rights, including certain of the Protected Channels and the programs that make up those Protected Channels; (ii) inducing, encouraging, causing, facilitating, and/or materially contributing to the unauthorized reproduction, distribution, public performance, and/or transmission by others of the programs that make up the Protected Channels in which DISH holds exclusive rights; (iii) distributing, selling, advertising, marketing, or promoting the My Indian TV Service, or any other service that contains, connects to, offers for download, transmits, assists in the transmission of, streams, hosts, provides access to, or otherwise distributes or publicly performs, directly or indirectly, by means of any device or process, one or more of the programs that make up the Protected Channels in which DISH holds exclusive rights; or (iv) enabling, assisting or consulting with other persons or entities to do any of the activities described in (i)-(iii) above, including through the sale of assets used by Defendants to infringe copyrighted material;

b) For the 177 Registered Works, statutory damages as awarded by the Court up to $150,000 per registered work infringed under 17 U.S.C. § 504(c), or the Defendants' profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b);

c) For unregistered works, an award of Defendants' profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b);

      d)      Awarding DISH its costs of prosecuting this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

      e)      Awarding DISH prejudgment interest at the highest legal rate allowed under law;

      f)      Directing Defendants to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which they have complied with the Judgment of the Court; and

      g)      Awarding DISH such other and further relief as this Court deems just, proper, and equitable.

Dated:  August 10, 2021

                                                               Respectfully submitted,
                                                               DAVIS WRIGHT TREMAINE LLP

                                                               By:    */s/ Robert D. Balin*

                                                               Robert D. Balin
                                                               Adam I. Rich
                                                               1251 Avenue of the Americas
                                                               21st Floor
                                                               New York, NY 10020
                                                               Tel. 212.489.8230
                                                               Email:  robertbalin@dwt.com
                                                                                                   adamrich@dwt.com

                                                               *Attorneys for Plaintiff DISH Network L.L.C.*